No. 25-_____ 5251

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

In re GUN OWNERS OF AMERICA, INC., *et al.*,

Petitioners.

_____

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia

_____

## PETITION FOR A WRIT OF MANDAMUS

_____

Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180
T: (703) 356-5070
rob@wjopc.com

Stephen D. Stamboulieh
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
stephen@sdslaw.us

Dated: July 9, 2025

# CERTIFICATE AS TO PARTIES

Pursuant to Circuit Rule 28(a)(1), Petitioners Gun Owners of America, Inc. ("GOA") and Gun Owners Foundation ("GOF") hereby certify as follows:

GOA and GOF are plaintiffs in the district court and Petitioners in this Court.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is the defendant in the district court and the Respondent here.

No amici or intervenors appeared in the district court and none yet has appeared in this proceeding.

This Petition has not previously been before this Court or any other court. There are no related cases pending in this Court or any other court of which counsel are aware.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Petitioner GOA certifies that it is a non-profit, non-stock corporation. GOA has no parent corporation or subsidiaries, and no publicly held corporation holds any stock in GOA. Petitioner GOF certifies that it is a non-profit, non-stock corporation. GOF has no parent corporation or subsidiaries, and no publicly held corporation holds any stock in GOF.

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ISSUE PRESENTED FOR REVIEW . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

PROCEDURAL AND FACTUAL BACKGROUND . .. . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    I.     The District Court's Indefinite Delay Has Left Petitioners with No Other Adequate Means to Attain Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    II.    Following This Court's Repudiation of the "Inherent Authority" the District Court Purported to Exercise, Petitioners Have a Clear and Indisputable Right to Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    III.    Issuance of the Writ Is Appropriate Under the Circumstances . . . . . . . . .12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Constitutional Provisions**

First Amendment ............................................................................. passim


**Cases**

*A.A.R.P. v. Trump*, 145 S. Ct. 1364 (2025) ............................................15

*Bd. of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472 (D.D.C. 1991) .............................................................................................10

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718 (9th Cir. 2007) ......................................................................9

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367 (2004) ..........................................8

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................................................14

*Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025) ........2, 6, 11

*In re Clinton*, 970 F.3d 357 (D.C. Cir. 2020) .......................... 8, 9, 10, 12

*In re Hicks*, 105 F. App'x 534 (4th Cir. 2004) .......................................15

*In re Jackson*, 630 F. App'x 139 (3d Cir. 2016) ................................. 12, 15

*In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023) ...................................10

*In re Shumans*, 2022 U.S. App. LEXIS 25259 (11th Cir. Sept. 8, 2022) ...............15

*In re Windsor*, 2024 U.S. App. LEXIS 32403 (D.C. Cir. Dec. 20, 2024) ...............16

*Johnson v. Rogers*, 917 F.2d 1283 (10th Cir. 1990) .................................15

*Neb. Press Ass'n v. Stuart*, 423 U.S. 1327 (1975) ..................................14

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) ...........................10

*Prosser v. Shappert*, 2025 U.S. App. LEXIS 1208 (3d Cir. Jan. 16, 2025) ............12

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) .................................9

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) ................................12


**Statutes**

18 U.S.C. § 922(t)(2)(C) ................................................................5

18 U.S.C. § 926(a) ......................................................................5

28 U.S.C. § 1651(a) ..................................................................1, 8

34 U.S.C. § 40901 .......................................................................5


**Other Authorities**

Ben Whedon, *FBI, ATF Use Gun Background Checks to Track Specific Purchasers, Documents Show*, Just the News (Jan. 13, 2023) ...........................13

Dan Zimmerman, *FBI Monitoring Gun Owners Who Sell Firearms via Facebook*, Truth About Guns (July 23, 2023) .......................................................13

Emily Miller, *EXCLUSIVE: ATF Gains Financial Information on Potential Gun Buyers for Warrantless Tracking, Documents Show*, Epoch Times (Mar. 23, 2023) ...........................................................................................14

Emily Miller, *EXCLUSIVE: Documents Show FBI and ATF Warrantless Surveillance Through Gun Background Checks*, Epoch Times (Jan. 17, 2023) ..13

Emily Miller, *EXCLUSIVE: FBI Carried Out Warrantless Monitoring on Man Who Posted Guns for Sale on Facebook*, Epoch Times (July 25, 2023) .............14

Emily Miller, *EXCLUSIVE: Texas Coordinates with ATF to Share Income of Residents for Warrantless Monitoring*, Epoch Times (Apr. 18, 2023).................14

Erich Pratt, *Gun Owners Aren't Criminals: It's Time to Dismantle NICS Monitoring*, Daily Wire+ (May 5, 2025).............................................................14

*FBI Weaponizes Background Checks to Enforce California Gun Ban*, ZeroHedge (Apr. 1, 2025)..........................................................................................................14

God Family and Guns, *ATF Is Monitoring Your Gun Purchases: This Leaked Document Is Proof!!*, YouTube (Apr. 28, 2021) ............................................13

Guns & Gadgets 2nd Amendment News, *SHOCKER!!! FBI & ATF Caught SECRETLY Monitoring Gun Owners!!*, YouTube (Jan. 15, 2023).....................13

John Crump, *ATF & FBI Monitor Over 1,000 Law-Abiding Gun Owners*, AmmoLand (Oct. 22, 2021) ....................................................................................13

John Crump, *ATF Changes Policy on NICS "Pre-Crime" Monitoring*, AmmoLand (Apr. 28, 2025)..................................................................................14

John Crump, *Leaked Document Shows ATF Spying on Gun Buyers Through NICS ~ VIDEO*, AmmoLand (Apr. 26, 2021) ...............................................................13

P. Gardner Goldsmith, *Docs Reveal FBI, ATF Have Been Monitoring Law-Abiding Gun Buyers Through Federal Background Checks*, mrcTV (Jan. 17, 2023).......13

Rand Paul Letter to Daniel Driscoll, Acting Director, BATFE (Apr. 10, 2025)......14

# GLOSSARY OF TERMS

ATF – Bureau of Alcohol, Tobacco, Firearms and Explosives

FBI – Federal Bureau of Investigation

FOIA – Freedom of Information Act

GOA – Gun Owners of America, Inc.

GOF – Gun Owners Foundation

NICS – National Instant Criminal Background Check System

## JURISDICTIONAL STATEMENT

This Petition arises from *Gun Owners of Am., Inc. v. BATFE*, No. 1:21-cv-02919-ABJ (D.D.C.), currently pending in the U.S. District Court for the District of Columbia.  This Court has jurisdiction over this Petition and the authority to issue writs of mandamus, pursuant to the All Writs Act, 28 U.S.C. § 1651, and as provided by Rule 21 of the Federal Rules of Appellate Procedure.

## ISSUE PRESENTED FOR REVIEW

Whether this Court should issue a writ of mandamus to the district court, ordering that court to rule forthwith on pending motions pertaining to an ongoing, nearly 22-month-old "temporary" protective order for inadvertently produced FOIA materials?

## INTRODUCTION

Pursuant to the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure, Petitioners respectfully request that this Court issue a writ of mandamus to the district court below, compelling it to end its indefinite delay in ruling on pending motions relating to a nearly 22-month-long "temporary" gag order and prior restraint preventing Petitioners, members of the press, from reporting evidence of governmental misconduct to the public.  Exacerbating the need for relief from this unprecedented prior restraint is this Court's decision repudiating the very

1

"inherent authority" on which the district court purportedly relied to justify its order that Petitioners remain silent for nearly two years.

The underlying Freedom of Information Act ("FOIA") litigation pertains to a request made by Gun Owners of America, Inc. and Gun Owners Foundation ("Petitioners") to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on April 28, 2021.  In it, Petitioners sought records related to a secret surveillance program administered by the Federal Bureau of Investigation ("FBI"), and used by FBI, ATF, and other federal and state law enforcement agencies to unlawfully and unconstitutionally monitor and record the firearm purchases of American citizens who are legally eligible to purchase and possess firearms.

During its production of records, ATF produced documents that contained redactions that had been marked, but were not actually made.  But there is no statutory FOIA remedy for "clawing back" inadvertently produced materials, and there is a corresponding dearth of authority supporting a district court's authority to issue a protective order to accomplish the same.  Nevertheless, on September 18, 2023, the district court barred Petitioners from "us[ing]" any of the inadvertently produced information.  That order continues in effect to this day, despite a pending motion for summary judgment (briefed in 2023) and a more recent pending motion to lift the protective order in light of this Court's binding ruling in *Hum. Rts. Def.*

*Ctr. v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025) – a decision which makes clear that the district court has no authority to do what it did.

Absent any indication that the district court will rule on the parties' pending motions anytime soon, Petitioners have been deprived of their right to be heard. And because Petitioners have been gagged for nearly two years from printing the news – a prior restraint on political speech that is patently unconstitutional – they turn to this Court for relief.

## PROCEDURAL AND FACTUAL BACKGROUND

On April 28, 2021, Petitioners Gun Owners of America, Inc. and Gun Owners Foundation submitted a Freedom of Information Act request to the Bureau of Alcohol, Tobacco, Firearms and Explosives. When ATF failed to respond to Petitioners' FOIA Request for well over one year, Petitioners filed suit on July 5, 2022. Over the ensuing months, ATF made a series of 12 productions of records to Petitioners, showing in detail how the FBI's surveillance program – dubbed the "NICS[1] Monitoring Program" – has been used by ATF to surveil, without a warrant and often without even any particularized suspicion at all, untold thousands of Americans whose firearm transactions *are approved* by the FBI and who thus are eligible to purchase and possess firearms.

---

[1] NICS stands for the FBI's National Instant Criminal Background Check System ("NICS"), which administers federal background checks for firearm transfers made by Federal Firearms Licensees.

On September 6, 2023, ATF made a thirteenth production to Petitioners, which is the subject of the current dispute. That ATF production contained FOIA redactions that were indicated, but not actually made. After Petitioners' counsel notified counsel for ATF of this inadvertent production, asking for a redacted version to be shared publicly, ATF and its counsel demanded that Petitioners' counsel immediately destroy all copies of the unredacted production and provide written confirmation of this destruction. Even though Petitioners explained there was no urgency, representing that no dissemination of the records had taken place and that none would take place until the matter could be resolved in court, ATF filed an "expedited" motion seeking a protective order. ECF #20. Five days later on September 18, 2023, the district court entered a minute order largely granting (purportedly in an interim form) the relief sought by ATF, ordering that, "pending resolution of the motion for protective order, plaintiff must sequester the FOIA records that were inadvertently produced on September 6, 2023, and that it shall not disseminate, disclose, or use those records or their contents for any purpose pending the Court's ruling on the Motion for Protective Order." Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Sept. 18, 2023). Appx.008. The district court then entered a second minute order on October 5, 2023, which did not address and therefore effectively denied Petitioners' request to file a brief under seal (ECF #25 at 6) or to have the court consider the unredacted production *in camera* (*id.* at 4). *See* Minute

Order, No. 1:21-cv-02919-ABJ (D.D.C. Oct. 5, 2023). Appx.010. In other words, the district court refused to review the contents of the information it ordered that Petitioners could not "use," despite the First Amendment concerns Petitioners had raised. *See* ECF #22 at 2.

The parties then briefed ATF's Motion for Protective Order (ECF ##28, 29). In their Opposition, Petitioners explained that the NICS Monitoring Program underlying their FOIA request violates several provisions of federal law requiring the destruction of NICS records within 24 hours of approval, and prohibiting the creation of federal registries of gun owners. *See* ECF #28 at 11-14 (citing 118 Stat. at 95; 18 U.S.C. §§ 922(t)(2)(C), 926(a); 34 U.S.C. § 40901). Petitioners explained that the protective order ATF sought was a presumptively unconstitutional prior restraint on quintessential speech and press activity protected under the First Amendment. *Id.* at 18-22 (collecting cases). Finally, Petitioners identified a number of courts that had questioned the existence of a federal court's authority to issue a protective order clawing back FOIA productions. *Id.* at 4-8 (collecting cases).

Even so, on October 30, 2023, the district court granted ATF's Motion for Protective Order and "ORDERED that, until further order of this Court, plaintiffs and their counsel (1) shall sequester the September 6, 2023, inadvertently produced FOIA records and the contents of those records, and (2) shall not disseminate, disclose, or use for any purpose those records or the contents of those records."

Order, No. 1:21-cv-02919-ABJ (D.D.C. Oct. 30, 2023), ECF #30. Appx.015. The district court's opinion failed to address most of the arguments raised by Petitioners in their Opposition, instead focusing on the "temporary" nature of the court's order, "the Court's implied power to issue a temporary protective order," and questioning whether Petitioners' "cited cases … apply to *temporary* protective orders." *Id.* at 1, 3 (emphasis original).

With the district court's "temporary" protective order in place, ATF moved for summary judgment, arguing that its planned redactions in Production 13 *would have* been appropriate *had they been* made. *See* ECF #32. Petitioners did not dispute this, noting only that the redactions *had not actually been made*, and reiterating their position that the only disputed issue between the parties was ATF's motion for a permanent protective order, not summary judgment. *See* ECF #33. Summary judgment briefing was completed in January of 2024 (nearly 18 months ago), but district court has failed to rule, allowing its "temporary" protective order issued nearly 22 months ago to become rather permanent.

Then, on February 11, 2025, ATF filed a Notice of Supplemental Authority, asking the district court to order supplemental briefing on this Court's intervening decision in *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025). *See* ECF #35. In response, Petitioners filed a Motion to Lift Protective Order on March 12, 2025, ECF #36, explaining that this Court's *HRDC* decision "has squarely

rejected the notion that a court holds the 'inherent authority' to impose limitations on the use, dissemination, or reporting of inadvertently disclosed FOIA materials...." *Id.* at 6-7. The same day, the district court broke its nearly 16-month silence, ordering supplemental briefing "on the effect of the D.C. Circuit's opinion … on defendant's pending motion for summary judgment...." Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Mar. 12, 2025). Appx.016. And after the parties engaged in that further briefing (ECF ##37, 38, 39, 40), the district court ordered ATF to file under seal the entirety of its unredacted Production 13, which ATF did on April 18, 2025, ECF #41. *See* Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Apr. 11, 2025). Appx.018. Since then, the district court has resumed its silence.

## ARGUMENT

For nearly 22 months, under the guise of a "temporary" protective order, the district court has prohibited Petitioners – members of the press – from printing the news, while also prohibiting Petitioners' attorneys from communicating with their clients, advocating for their clients' interests, or even accessing portions of their own attorney work product. Even more problematically, despite repeated requests from Petitioners (ECF ##25, 28, 33), the district court has declined to consider the basis of its order. In other words, the district court has prohibited Petitioners and their lawyers from speaking and printing the news *without having any knowledge about the content of the speech being prohibited*. And all the while, the district court has

failed to resolve ATF's Motion for Summary Judgment from December 2023, Petitioners' Motion to Lift Protective Order from March 2025, or otherwise issue any sort of final judgment that Petitioners might appeal to this Court. Petitioners therefore seek a Writ of Mandamus from this Court, ordering the district court to resolve the matter with all haste, so that Petitioners' First Amendment rights can be vindicated and so that they can print the news.

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This Court has explained that "[m]andamus lies only where the familiar tripartite standard is met: (1) the petitioner has 'no other adequate means to attain the relief'; (2) the petitioner has demonstrated a 'clear and indisputable' right to issuance of the writ; and (3) the Court finds, 'in the exercise of its discretion,' that issuance of the writ is 'appropriate under the circumstances.'" *In re Clinton*, 970 F.3d 357, 362 (D.C. Cir. 2020) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). Although "these hurdles are demanding, they are 'not insuperable,' and a 'clear abuse of discretion' by a lower court can certainly justify mandamus...." *Id.* (citation omitted). Each prong is satisfied here.

8

## I.     The District Court's Indefinite Delay Has Left Petitioners with No Other Adequate Means to Attain Relief.

Currently pending before the district court are ATF's December 8, 2023 Motion for Summary Judgment, now 19 months old, and Petitioners' March 12, 2025 Motion to Lift Protective Order, now 4 months old. The district court has ruled on neither, has declined to apprise the parties on when rulings may issue, has not requested oral argument on either, and accordingly has prevented Petitioners from obtaining an appealable order. All the while, Petitioners have remained gagged – for nearly 22 months – from engaging in quintessential First Amendment activity – printing the news.

As the Supreme Court has explained, "[o]rdinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed or to review an appealable decision of record." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27-28 (1943). But the obvious corollary is that, without one such alternative method of appeal available here, Petitioners have "no other adequate means to attain the relief" sought. *Clinton*, 970 F.3d at 362. Indeed, the district court's indefinite delay has *deprived* Petitioners of an appealable order, and they are now left in limbo, entirely at the district court's mercy and subject to its prior restraint. In the Ninth Circuit's words, such an "indefinite delay … place[s] a plaintiff effectively out of court" and "amounts to a refusal to proceed to a disposition on the merits." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient*

*Surgery Ctr., Inc.*, 490 F.3d 718, 723-24 (9th Cir. 2007). Mandamus is therefore necessary here.

**II.    Following This Court's Repudiation of the "Inherent Authority" the District Court Purported to Exercise, Petitioners Have a Clear and Indisputable Right to Relief.**

Next, Petitioners have "a 'clear and indisputable' right to issuance of the writ." *Clinton*, 970 F.3d at 362. Indeed, this Court already has resolved the issue below in their favor. Gag orders on the media – preventing members of the press from printing the news – are rare in this country. And rightfully so, as such prior restraints "are permitted 'only in exceptional cases,'" because generally, "[e]ven a restraint of speech for a limited period is inconsistent with the First Amendment." *Bd. of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472, 474 & n.7 (D.D.C. 1991) (quoting *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931)); *see also In re Sealed Case*, 77 F.4th 815, 829 (D.C. Cir. 2023) ("Prior restraints include 'court orders that actually forbid speech activities' in advance of the speech occurring. … Content-based restrictions target 'particular speech because of the topic discussed or the idea or message expressed.' … Both types of restrictions are presumptively unconstitutional, and generally call for strict scrutiny."); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 418 (1971) ("An "injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights."). Petitioners are aware of no other case where a court has

allowed a *presumptively unconstitutional* prior restraint to persist as long as this one has. That the district court felt no urgency in even learning the *contents* of the speech it was restraining makes this Court's intervention all the more pressing.

Moreover, this Court's recent decision in *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025) ("*HRDC*"), leaves no question that both motions presently languishing before the district court should be resolved in Petitioners' favor, because the district court lacked Article III authority to issue its "temporary" protective order in the first place. Accordingly, this Court's *HRDC* decision resolves all issues pending below. As this Court explained in that opinion, courts simply lack the authority to "bar [Petitioners] from disclosing, disseminating, or making use of the accidentally produced" materials. *HRDC*, 126 F.4th at 715. That decision could not be more on point and directly controlling of the outcome of this case. As this Court explained, "FOIA does not provide for the compelled return or destruction of inadvertently produced information," and there is no "'implied' or inherent judicial power to create a mechanism for doing so." *Id.* at 717. Indeed, a FOIA clawback order "is of a different species" compared to those powers "necessary to the courts' exercise of their Article III authority," such as "admit[ting] members to the bar, disciplin[ing] bar members, punish[ing] contempt of court," and so on. *Id.* at 718.

11

Yet even with this clear repudiation of its "temporary" protective orders, and clear instruction that it has no authority to issue the permanent relief ATF seeks, the district court still has refused to act, leaving Petitioners with no choice but to seek relief from this Court.

## III.    Issuance of the Writ Is Appropriate Under the Circumstances.

Finally, this Court should "exercise … its discretion" to conclude "that issuance of the writ is 'appropriate under the circumstances.'" *Clinton*, 970 F.3d at 362. Rather than departing from the decisions of the U.S. Supreme Court and this Court's sister circuits, issuance of the writ here would be harmonious with them.

Indeed, "[t]here can be no doubt that, where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ 'in order that [it] may exercise the jurisdiction of review given by law.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-62 (1978). Courts have reiterated this principle time and again, with some noting that "[m]andamus may be appropriate to compel a District Court to act when a delay in ruling is tantamount to a denial of due process." *In re Jackson*, 630 F. App'x 139, 140 (3d Cir. 2016); *see also Prosser v. Shappert*, 2025 U.S. App. LEXIS 1208, at *4-5 (3d Cir. Jan. 16, 2025) ("Plaintiffs may file a writ of mandamus seeking to compel the Williams Court to rule on the pending motion. … '[A]n appellate court may issue a writ of mandamus on the ground that undue delay is tantamount to a failure to exercise jurisdiction.'").

As Petitioners have explained, "for the past [now nearly 22] months, Plaintiffs – members of the press – have been prohibited from printing the news" under the district court's "temporary" protective order. ECF #36 at 2. Once again, this order was issued without the benefit of even knowing the *contents* of ATF's unredacted Production 13, and thus without knowing the content of the speech being restrained.

In contrast to the district court's seeming disinterest in the NICS Monitoring Program, Petitioners' work to uncover information about it has garnered significant attention in the press, from the public, from Congress, and from the Administration. Consider the extensive print and video media coverage[2] of ATF and FBI's covert surveillance of eligible gun purchasers, dating back to 2021[3] and culminating in

---

[2] *See, e.g.*, Guns & Gadgets 2nd Amendment News, *SHOCKER!!! FBI & ATF Caught SECRETLY Monitoring Gun Owners!!*, YouTube (Jan. 15, 2023), https://youtu.be/crVB8GRHlGU; God Family and Guns, *ATF Is Monitoring Your Gun Purchases: This Leaked Document Is Proof!!*, YouTube (Apr. 28, 2021), https://youtu.be/qlXCFooQVWo; Ben Whedon, *FBI, ATF Use Gun Background Checks to Track Specific Purchasers, Documents Show*, Just the News, https://tinyurl.com/mtuw3mtn (Jan. 13, 2023); P. Gardner Goldsmith, *Docs Reveal FBI, ATF Have Been Monitoring Law-Abiding Gun Buyers Through Federal Background Checks*, mrcTV (Jan. 17, 2023), https://tinyurl.com/yckzptp8; Dan Zimmerman, *FBI Monitoring Gun Owners Who Sell Firearms via Facebook*, Truth About Guns (July 23, 2023), https://tinyurl.com/mr4ay2mt.

[3] John Crump, *Leaked Document Shows ATF Spying on Gun Buyers Through NICS ~ VIDEO*, AmmoLand (Apr. 26, 2021), https://tinyurl.com/3fjvxckr; John Crump, *ATF & FBI Monitor Over 1,000 Law-Abiding Gun Owners*, AmmoLand (Oct. 22, 2021), https://tinyurl.com/y77fpzt7; Emily Miller, *EXCLUSIVE: Documents Show FBI and ATF Warrantless Surveillance Through Gun Background Checks*, Epoch Times, https://tinyurl.com/ycxf8a62 (Jan. 17, 2023); Emily Miller, *EXCLUSIVE: ATF Gains Financial Information on Potential Gun Buyers for Warrantless Tracking, Documents Show*, Epoch Times, https://tinyurl.com/yebs5m7z (Mar. 23,

recent reporting that the federal government had abused the program to aid local enforcement of California's gun control laws[4] and target those who had attended Washington, DC protests on January 6, 2021.[5]  Also consider the oversight interest Members of Congress have expressed in the program, including Senator Rand Paul (R-KY), who raised concerns about "its potential to infringe on Americans' civil liberties."[6]  In light of ATF's recent self-imposed limitations on use of the program in response to these widespread concerns[7] – but not its outright elimination – Petitioners' coverage of NICS Monitoring continues to be of great importance to the American public.

As the Supreme Court once observed in the preliminary injunction context, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("Where …

---

2023); Emily Miller, *EXCLUSIVE: Texas Coordinates with ATF to Share Income of Residents for Warrantless Monitoring*, Epoch Times, https://tinyurl.com/4fath9wy (Apr. 18, 2023); Emily Miller, *EXCLUSIVE: FBI Carried Out Warrantless Monitoring on Man Who Posted Guns for Sale on Facebook*, Epoch Times, https://tinyurl.com/yv6mm39c (July 25, 2023).

[4] *FBI Weaponizes Background Checks to Enforce California Gun Ban*, ZeroHedge (Apr. 1, 2025), https://tinyurl.com/44p2ad9d.

[5] Erich Pratt, *Gun Owners Aren't Criminals: It's Time to Dismantle NICS Monitoring*, Daily Wire+ (May 5, 2025), https://tinyurl.com/mrxjpcth.

[6] Rand Paul Letter to Daniel Driscoll, Acting Director, BATFE (Apr. 10, 2025), https://tinyurl.com/bddsy7ju.

[7] John Crump, *ATF Changes Policy on NICS "Pre-Crime" Monitoring*, AmmoLand (Apr. 28, 2025), https://tinyurl.com/293spkdx.

a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment."). Not only has the district court's "temporary" protective order deprived Petitioners of their First Amendment rights to engage in protected speech and press activity *for a period of almost two years*, but also it "is tantamount to a denial of due process," *Jackson*, 630 F. App'x at 140, as Petitioners have no means of seeking relief from the gag order other than to *wait and hope* for the district court to do the right thing, *sua sponte*.

Finally, the indeterminate length of the district court's delay militates in favor of issuance of the writ. *Compare In re Hicks*, 105 F. App'x 534, 534 (4th Cir. 2004) (emphasis added) ("[N]o significant action has been taken in the district court for over seven months. Accordingly, we deny Hicks' mandamus petition without prejudice to her refiling it should the district court fail to act *within a reasonable time*."), *and In re Shumans*, 2022 U.S. App. LEXIS 25259, at \*3 (11th Cir. Sept. 8, 2022) (not entitled to mandamus for delay of "fewer than six months"), *with Johnson v. Rogers*, 917 F.2d 1283, 1284-85 (10th Cir. 1990) (granting a writ of mandamus based on a 14-month delay in the district court's processing of a habeas petition). *See also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025) (stating that the "District Court's inaction – … for 14 hours and 28 minutes – had the practical effect of

15

refusing an injunction to detainees facing an imminent threat of severe, irreparable harm").

In comparison, the district court's inaction on ATF's Motion for Summary Judgment has now reached its 22nd month.  That "delay [is] 'so egregious as to warrant mandamus.'"  *In re Windsor*, 2024 U.S. App. LEXIS 32403, at \*1 (D.C. Cir. Dec. 20, 2024).

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court issue a writ of mandamus ordering the district court to end its indefinite delay and rule on the parties' pending motions.

Dated: July 9, 2025                          Respectfully submitted,

*/s/ Robert J. Olson*                        */s/ Stephen D. Stamboulieh*
Robert J. Olson                              Stephen D. Stamboulieh
WILLIAM J. OLSON, P.C.                       Stamboulieh Law, PLLC
370 Maple Avenue West, Ste. 4                P.O. Box 428
Vienna, VA 22180                             Olive Branch, MS 38654
T: (703) 356-5070                            T: (601) 852-3440
rob@wjopc.com                                stephen@sdslaw.us

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This Petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this Petition contains 3,769 words, excluding parts of the Petition exempted by Fed. R. App. P. 32(f).

2. This Petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

17

## CERTIFICATE OF SERVICE

I hereby certify that, on July 9, 2025, a copy of the foregoing Petition for a

Writ of Mandamus was served via United States Postal Service, Priority Mail

Express, upon the following:

The Honorable Amy Berman Jackson
United States District Court
for the District of Columbia
333 Constitution Avenue, NW
Washington, DC  20001

Sean Michael Tepe, Esq.
Assistant United States Attorney
United States Department of Justice
601 D Street, NW
Washington, DC  20530

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh